# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN
## MILWAUKEE DIVISION

PATRICK MANIACI, Individually and on Behalf of All Others Similarly Situated,

   Plaintiff,

vs.

BONDED COLLECTION CORPORATION, and COLONY BRANDS, INC.,

   Defendants.

Case No.: 18-cv-267

**CLASS ACTION COMPLAINT**

**Jury Trial Demanded**

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA"), and the Wisconsin Consumer Act, chapter 427, Wisconsin Statutes (the "WCA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Patrick Maniaci is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from Plaintiff a debt allegedly incurred for personal, family or household purposes, specifically, a consumer credit account.

5. Plaintiff is also a "customer" as defined in the Wisconsin Consumer Act, Wis. Stat. § 421.301(17), in that the alleged debt allegedly arose from consumer transaction that included agreements to defer payment, namely a consumer credit account.

6. Defendant Bonded Collection Corporation ("BCC") is a foreign corporation with its principal place of business located at 2400 East Devon, Suite 257, Des Plaines, Illinois 60018.

7. BCC is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

8. BCC is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes.

9. BCC is licensed as a "Collection Agency" under Wis. Stat. § 218.04 and. Wis. Admin. Code Ch. DFI-Bkg 74.

10. BCC is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

11. Defendant Colony Brands, Inc. ("Colony") is a Wisconsin corporation with its primary place of business at 1112 7th Avenue, Monroe, Wisconsin 53566.

12. Colony does business under fictitious, trade and/or brand names, including "Montgomery Ward," "Midnight Velvet," and "Through the Country Door," among others.

13. Colony is a retailer of home goods, operating primarily over the internet and through catalog sales.

14. Colony allows consumers to purchase goods under open-end credit plans.

15. On its face, the WCA's regulation of debt collectors applies without distinction to creditors collecting on their own behalf, to creditors who hire other debt collectors to collect on the creditor's behalf, and to third-party debt collectors acting on behalf of creditors. *See* Wis. Stat. § 427.103(3).

16. Wis. Stat. § 427.103(3) defines debt collector as: "any person engaging, *directly or indirectly*, in debt collection, and includes any person who sells, or offers to sell, forms represented to be a collection system, device or scheme, intended or calculated to be used to collect claims. The term does not include a printing company engaging in the printing and sale of forms." (emphasis added).

17. Wis. Stat § 427.103(2) states: "Debt collection" means any action, conduct or practice of soliciting claims for collection or in the collection of claims owed or due or alleged to be owed or due a merchant by a customer."

18. Colony is a "debt collector" under Wisconsin law, in that it collects consumer debts owed to itself, both directly and indirectly through collection agencies.

19. Colony is a "merchant" as defined in the WCA, as the alleged debts arise from use of Plaintiff's consumer credit account. Wis. Stat. § 421.301(25) ("The term [merchant] includes but is not limited to a seller, lessor, manufacturer, creditor, arranger of credit and any assignee of or successor to such person.")

20. The Western District of Wisconsin has noted: "Unlike the FDCPA, the Wisconsin Consumer Act does not provide exceptions to its general definition of a debt collector." *Hartman v. Meridian Fin. Servs.*, 191 F. Supp. 2d 1031, 1048 (W.D. Wis. 2002).

21. The Wisconsin Department of Financial Institutions has likewise designated merchants and creditors as "Debt Collectors" under the WCA:

Anyone attempting to collect a debt arising from a consumer credit transaction in Wisconsin, whether a merchant doing its own debt collecting or a third-party debt collector, must follow Wisconsin's debt collection law, Ch. 427, Wis. Stats. This is an important point because many merchants collecting debt owed directly to them mistakenly believe that they are exempt from Wisconsin's debt collection law because they are not included within the definition of "debt collector" under the federal Fair Debt Collection Practices Act.

https://www.wdfi.org/wca/business_guidance/creditors/debt_collection/.

22. Colony uses third-party debt collection agencies, including the third-party debt collection agencies named as co-defendants in this case, to collect consumer debts. Colony directly or indirectly, is a debt collector under this arrangement. Wis. Stat. § 427.103(3).

23. Any company meeting the definition of a "debt collector" (here, Mason, Colony, and Silver Star) is vicariously liable for the actions of a second company collecting debts on its behalf. *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 325-26 (7th Cir. 2016) (assignees who are "debt collectors" are responsible for the actions of those collecting on their behalf); *citing Pollice*, 225 F.3d at 404-05.

## FACTS

24. At its height, the original Montgomery Ward was one of the largest mail order and department store retailers in the United States. The original Montgomery Ward no longer exists, having filed for Chapter 11 bankruptcy in 1997 and having been liquidated in 2001. The current incarnation of Montgomery Ward is a division of Colony, whose predecessor purchased the Montgomery Ward name, trademarks and other intellectual property assets in 2008.

25. Prior to August 7, 2017, Plaintiff had a Montgomery Ward-branded store credit account, issued by Colony, and used only for personal, family or household purposes, specifically, purchases of household goods on the "Montgomery Ward" online catalog. https://www.wards.com/.

26. On or about August 7, 2017, Colony mailed an account statement to Plaintiff regarding an alleged debt, allegedly owed to Colony and associated with Plaintiff's Montgomery Ward credit account ending in 129W. A copy of this account statement is attached to this complaint as Exhibit A.

27. Exhibit A contains the following:

4

```
CUSTOMER STATEMENT
Account Number                    129W
New Balance               $321.25
Payment Due Date          09/05/2017
Minimum Payment Due        $135.60
```

Exhibit A.

28.     Exhibit A states that, as of August 7, 2017, Plaintiff's account ending in 129W had a "New Balance" of $321.25, with a "Payment Due Date" of September 5, 2017, and a "Minimum Payment Due" of $135.60.

29.     On or about August 22, 2017, BCC mailed Plaintiff a debt collection letter regarding the same alleged debt, allegedly owed to "MONTGOMERY WARD." A copy of this debt collection letter is attached to this complaint as Exhibit B.

30.     Upon information and belief, Exhibit B is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

31.     Upon information and belief, Exhibit B is a form debt collection letter, generated by computer, and used by BCC to attempt to collect alleged debts.

32.     Upon information and belief, Exhibit B was the first letter that BCC sent to Plaintiff with respect to the alleged debt referenced in Exhibit B.

33.     Exhibit B contains the statutory validation notice that the FDCPA, 15 U.S.C. § 1692g, requires that debt collectors send debtors along with, or within five days of, their initial communications:

IMPORTANT CONSUMER NOTICE

Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days after receiving this notice that you dispute the validity of this debt or any portion of it, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request of this office in writing within 30 days after receiving this notice this office will provide you the name and address of the original creditor, if different from the current creditor.

Exhibit B.

34. Exhibit B also states:

August 22, 2017

Creditor: MONTGOMERY WARD   321.25
Client Account #: XXXX-XXXX-XXXX-529W

Consumer: PATRICK MANIACI
Balance: $321.25
Account #: ▮▮▮▮0951

Exhibit B.

35. Exhibit B also contains a payment remittance slip, which contains the following:

| IF PAYING BY CREDIT CARD PLEASE FILL OUT BELOW. | |
|---|---|
| ☐ DISCOVER   ☐ VISA   ☐ MasterCard   ☐ AMERICAN EXPRESS | |
| CARD NUMBER: | |
| EXPIRATION DATE: | ZIP CODE: |
| NAME ON CARD: | CV CODE: |
| BALANCE DUE: $321.25 | PAYMENT AMOUNT: |
| SIGNATURE: | |

Exhibit B.

36. Exhibit B, mailed on August 22, 2017, just a few days after Montgomery Ward mailed Exhibit A to Plaintiff, states the "Balance Due" is $321.25.

37. Exhibit B does not state that Plaintiff could return the account to a current status by making a minimum payment, which is considerably less than the total account balance.

38. Exhibit B does not state any amount it is attempting to collect other than the "Balance" of $321.25.

6

39. Exhibit B, thus, represents that the debt had been accelerated and the full balance was due when Exhibit B was mailed.

40. BCC's representation in Exhibit B that Plaintiff's account had an "Account Balance" of $321.25 is false, deceptive, misleading, and unconscionable.

41. According to Exhibit A, as of August 22, 2017, when BCC mailed Exhibit B, Plaintiff's account a "Minimum Payment Due" of $135.60, and a "Payment Due Date" of September 5, 2017. Exhibit A.

42. The unsophisticated consumer cannot determine whether the debt had been accelerated or not, or how much debt is actually due as of the date of Exhibit B. Exhibit B states that the "Balance Due" is $135.60 while Exhibit A states that the "Minimum Payment Due" is only $135.60. *See Machnik v. RSI Enters.*, 2017 U.S. Dist. LEXIS 160772, at *6 (E.D. Wis. Sept. 29, 2017) ("In the context of a debt, 'owing' an amount is distinguishable from the amount 'due.'"); *see also Chuway v. Nat'l Action Fin. Servs.*, 362 F.3d 944, 948 (7th Cir. 2004) ("Suppose she had called and discovered that her current balance was $ 567.42. She wouldn't know whether to mail $ 367.42 to the defendant or $ 567.42, without making a further inquiry. She might pay the larger amount thinking she would be sued otherwise, even though the extra $ 200 might not yet be due, let alone overdue.").

43. Exhibit B, thus, represents that the debt had been accelerated and the full balance was due when Exhibit B was mailed.

44. BCC's representation in Exhibit B that BCC was attempting to collect the "Balance" of $321.25 is false, deceptive, misleading, and unconscionable.

45. Upon information and belief, Colony had not accelerated the balance when Exhibit B was mailed to Plaintiff.

7

46. With certain exceptions not applicable here, the WCA requires the mailing of a "Notice of Right to Cure" prior to the acceleration of a defaulted loan. *See* Wis. Stat. §§ 425.104, 425.105.

47. Upon information and belief, Colony had not sent Plaintiff notice of his right to cure default at the time Exhibit B was mailed to Plaintiff. Thus, neither Colony nor BCC were permitted to accelerate the balance when Exhibit B was mailed to Plaintiff.

48. BCC represented the amount of the debt in a way that was confusing to the unsophisticated consumer and misrepresented the amount of the debt.

49. Upon information and belief, Colony and BCC work in a scripted process to collect Colony debts such as Plaintiff's.

50. Upon information and belief, BCC is fully aware of the contents and representations in Exhibit A,

51. Upon information and belief, BCC is fully aware that Colony sends Exhibit A to consumers only a few days before BCC mails a letter in the form of Exhibit B.

52. Upon information and belief, BCC is fully aware that its letter is sent during account billing cycles wherein Colony has sent a statement to consumers seeking a "minimum payment" and not representing that the entire balance is due.

53. Plaintiff was confused by Exhibits A and B.

54. The unsophisticated consumer would be confused by Exhibits A and B.

55. Plaintiff had to spend time and money investigating Exhibits A and B.

56. Plaintiff had to take time to obtain and meet with counsel, including traveling to counsel's office by car and its related expenses, including but not limited to the cost of gasoline and mileage, to advise Plaintiff on the consequences of Exhibits A and B.

8

### *The FDCPA*

57. The FDCPA states that its purpose, in part, is "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). It is designed to protect consumers from unscrupulous collectors, whether or not there is a valid debt. *Mace v. Van Ru Credit Corp.,* 109 F.3d 338 (7th Cir. 1997); *Baker v. G.C. Services Corp.,* 677 F.2d 775, 777 (9th Cir. 1982); *McCartney v. First City Bank,* 970 F.2d 45, 47 (5th Cir. 1992). The FDCPA broadly prohibits unfair or unconscionable collection methods; conduct which harasses, oppresses or abuses any debtor; and any false, deceptive or misleading statements in connection with the collection of a debt; it also requires debt collectors to give debtors certain information. 15 U.S.C. §§ 1692d, 1692e, 1692f and 1692g.

58. The Seventh Circuit has held that whether a debt collector's conduct violates the FDCPA should be judged from the standpoint of an "unsophisticated consumer." *Avila v. Rubin,* 84 F.3d 222, 227 (7th Cir. 1996); *Gammon v. GC Services, LP,* 27 F.3d 1254, 1257 (7th Cir. 1994). The standard is an objective one—whether the plaintiffs or any class members were misled is not an element of a cause of action. *Bartlett v. Heibl,* 128 F.3d 497, 499 (7th Cir. 1997). "The question is not whether these plaintiffs were deceived or misled, but rather whether an unsophisticated consumer would have been misled." *Beattie v. D.M. Collections Inc.,* 754 F. Supp. 383, 392 (D. Del. 1991).

59. Because it is part of the Consumer Credit Protection Act, 15 U.S.C. §§ 1601 *et seq.*, the FDCPA should be liberally construed in favor of the consumer to effectuate its purposes. *Cirkot v. Diversified Fin. Services, Inc.,* 839 F. Supp. 941, 944 (D. Conn. 1993).

> The [Consumer Credit Protection] Act is remedial in nature, designed to remedy what Congressional hearings revealed to be unscrupulous and predatory creditor practices throughout the nation. Since the statute is

9

remedial in nature, its terms must be construed in liberal fashion if the underlying Congressional purpose is to be effectuated.

*N.C. Freed Co. v. Board of Governors,* 473 F.2d 1210, 1214 (2d Cir. 1973).

60. Statutory damages are recoverable for violations, whether or not the consumer proves actual damages. *Baker,* 677 F.2d at 780-1; *Woolfolk v. Van Ru Credit Corp.,* 783 F. Supp. 724, 727 and n. 3 (D. Conn. 1990); *Riveria v. MAB Collections, Inc.,* 682 F. Supp. 174, 177 (W.D.N.Y. 1988); *Kuhn v. Account Control Tech.*, 865 F. Supp. 1443, 1450 (D. Nev. 1994); *In re Scrimpsher*, 17 B.R. 999, 1016-7 (Bankr. N.D.N.Y. 1982); *In re Littles,* 90 B.R. 669, 680 (Bankr. E.D. Pa. 1988), *aff'd as modified sub nom. Crossley v. Lieberman,* 90 B.R. 682 (E.D. Pa. 1988), *aff'd*, 868 F.2d 566 (3d Cir. 1989).

61. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Pogorzelski v. Patenaude & Felix APC*, No. 16-C-1330, 2017 U.S. Dist. LEXIS 89678 *9 (E.D. Wis. June 12, 2017) ("A plaintiff who receives misinformation from a debt collector has suffered the type of injury the FDCPA was intended to protect against."); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected

similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Long v. Fenton & McGarvey Law Firm P.S.C.*, 223 F. Supp. 3d 773, 777 (S.D. Ind. Dec. 9, 2016) ("While courts have found that violations of other statutes . . . do not create concrete injuries in fact, violations of the FDCPA are distinguishable from these other statutes and have been repeatedly found to establish concrete injuries."); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

62. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection

11

practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

63. 15 U.S.C. § 1692e prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

64. 15 U.S.C. § 1692e(2)(A) specifically prohibits: "The false representation of — the character, amount, or legal status of any debt."

65. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

66. 15 U.S.C. § 1692f generally prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt."

67. 15 U.S.C. § 1692f(1) specifically prohibits the "collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

68. 15 U.S.C. § 1692g(a) states:

a) **Notice of debt; contents**

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

(1) the amount of the debt;

*The WCA*

69. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

12

Case 2:18-cv-00267-WED   Filed 02/21/18   Page 12 of 18   Document 1

70. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n**.**15, 596 N.W.2d 786 (1999) (citations omitted).

71. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

72. "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983). Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

73. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

74. The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

75. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

76. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

77. Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer . . . in such a manner as can reasonably be expected to threaten or harass the customer."

78. Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct which can reasonably be expected to threaten or harass the customer . . . ." Wis. Admin. Code § DFI-Bkg 74.16(9) defines such "other conduct" as "including conduct which violates the Federal Fair Debt Collection Practices Act."

79. Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

80. Wis. Stat. § 427.104(1)(L) states that a debt collector may not: "Threaten action against the customer unless like action is taken in regular course or is intended with respect to the particular debt."

## COUNT I – FDCPA

81. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

82. Count I is brought against defendant BCC.

83. Prior to sending Exhibit B, BCC was aware that Colony had sent Plaintiff an account statement stating Plaintiff's account had a "Minimum Payment Due" of $135.60, and a "Payment Due Date" of September 5, 2017.

84. BCC represented to Plaintiff that Plaintiff's Montgomery Ward account had been accelerated by seeking to collect the entire balance and not just the amount actually due.

85. BCC misrepresented the amount, character, and legal status of the debt it was collecting.

86. BCC's attempts to collect the entire balance of class members' Montgomery Ward accounts were false, misleading and confusing representations, and were also an unfair and unconscionable means of collecting a debt.

87. BCC violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(10), 1692(f), 1692f(1), and 1692g(a)(1).

## COUNT II – WCA

88. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

89. Count II is brought against both defendants.

90. The amounts that Colony and BCC are collecting in Exhibits A and B conflict with each other.

91. Colony's statement shows that, when both <u>Exhibits A and B</u> were sent to Plaintiff, the amount actually "due" by September 5, 2017 was $135.60.

92. BCC sent its letter to Plaintiff before the September 5, 2017 due date, and the balance BCC attempted to collect was greater than the amount due as stated in the account statement.

93. BCC's letter contradicts Colony's account statement and attempts to collect a portion of the debt that was not yet due.

94. BCC directly represented to Plaintiff that Plaintiff's Montgomery Ward account had been accelerated by seeking to collect the entire balance and not just the amount actually due.

95. Colony indirectly represented to Plaintiff that Plaintiff's Montgomery Ward account had been accelerated by allowing BCC to seek to collect the entire balance and not just the amount actually due.

96. Colony had not sent Plaintiff a notice of right to cure default, and thus was not permitted to accelerate the balance of Plaintiff's account, at the time both <u>Exhibits A and B</u> were sent to Plaintiff.

97. BCC and Colony misrepresented the amount, character, and legal status of the debt.

98. BCC's and Colony's attempts to collect the entire balance of class members' Montgomery Ward accounts were false, misleading and confusing representations, and were also an unfair and unconscionable means of collecting a debt.

99. Defendants violated Wis. Stat. §§ 427.104(1)(g), 427.104(1)(h), 427.104(1)(j), and 427.104(1)(L).

## CLASS ALLEGATIONS

100. Plaintiff brings this action on behalf of two Classes.

101. Class I ("Nationwide Class") consists of (a) all natural persons in the United States of America (b) who were sent an initial collection letter by BCC, (c) attempting to collect a "Montgomery Ward" debt owed to Colony, (d) that was incurred for personal, family or household purposes, (e) where the letter was mailed between February 21, 2017 and February 21, 2018, inclusive, (f) and was not returned by the postal service.

102. Class II ("Wisconsin Class") consists of (a) all natural persons in the United States of America (b) who were sent an initial collection letter by BCC, (c) attempting to collect a "Montgomery Ward" debt owed to Colony, (d) that was incurred for personal, family or household purposes, (e) where the letter was mailed between February 21, 2016 and February 21, 2018, inclusive, (f) and was not returned by the postal service.

103. Each Class is so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of each Class.

104. There are questions of law and fact common to the members of each class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether Exhibits A and B violate the FDCPA and/or the WCA.

105. Plaintiff's claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

106. Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

107. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

108. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: February 21, 2018.

**ADEMI & O'REILLY, LLP**

By: /s/ John D. Blythin
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com

18

Case 2:18-cv-00267-WED    Filed 02/21/18    Page 18 of 18    Document 1